IN THE MATTER OF JOSEPH ALTER.

Suffolk.  January 7, 1983. — May 11, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Attorney at Law*, Disciplinary proceeding.

The full court in reviewing attorney disciplinary actions by a single justice will inquire whether the judgment is markedly disparate from judgments normally entered by the single justices in similar cases. [156]

On appeal by the Board of Bar Overseers and the Bar Counsel from a judgment of a single justice of this court imposing public censure on an attorney at law who had pleaded guilty to Federal charges of concealing information and making a false statement for the purpose of continuing to receive his mother's Social Security payments following her death, the full court concluded that the judgment of the single justice was markedly disparate from the usual results in similar cases, and ordered the attorney suspended from the practice of law for a period of two years. [156-158]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on July 6, 1982.

The case was heard by *Nolan*, J.

*Daniel Klubock*, Bar Counsel (*Bonnie H. MacLeod-Griffin* with him).

*Joseph Wine* for Joseph Alter.

HENNESSEY, C.J.  This is an appeal by the Board of Bar Overseers (Board) and the Bar Counsel from a judgment entered by order of a single justice of this court on July 19, 1982, publicly censuring Attorney Joseph Alter, based upon an information and record of proceedings filed in the county court by the Board on July 6, 1982.

On September 16, 1967, Mr. Alter was appointed representative payee for his mother, Lillian Alter, to receive on her behalf monthly Social Security benefit checks.  From

the date of appointment until his mother's death on May 21, 1976, Mr. Alter received these monthly checks and endorsed them over to Bay View Nursing Home where his mother was in residence. Mr. Alter failed to notify the Social Security Administration of his mother's death and continued to receive monthly checks until November 3, 1977. He deposited these checks to his own account. In this way Mr. Alter misappropriated $2,577.80 from the Social Security Administration. After his mother's death, Mr. Alter stated to an employee of the Social Security Administration that Mr. Alter's mother was alive and residing with him.

The entire amount was paid back between July of 1979 and April of 1981. On October 30, 1981, Mr. Alter was convicted on his pleas of guilty to two counts of an information in the United States District Court for the District of Massachusetts, charging him with two crimes in concealing information and making a false statement for the purpose of obtaining Social Security payments. He was sentenced to imprisonment for one year, with the sentence suspended, placed on probation for a period of two years, and fined in the amount of $1,000.

Following a hearing before a panel of the Board on February 25, 1982, the panel recommended that Mr. Alter be suspended from the practice of law for a period of one year. The Board on June 14, 1982, voted to accept the panel report but modified the recommendation to a two-year suspension. Bar Counsel recommended a five-year suspension. Pursuant to S.J.C. Rule 4:01, § 8 (3), as appearing in 381 Mass. 784 (1980), the Board filed an information with the Supreme Judicial Court on July 6, 1982.

During the hearing before the panel of the Board, Mr. Alter testified that he was very close to his mother, was traumatized by her death and felt guilty for not visiting her more often. During the period in question, he was separated from his wife and in the process of a divorce. He testified that he believed he had, as representative of his mother, some right to the Social Security checks.

In his appearance before the single justice, Mr. Alter, speaking on his own behalf, admitted that he had made a serious mistake and that his was a grave and serious crime; cited the pressures resulting from the various criminal and disciplinary proceedings; informed the court that he reports for probation monthly and pays $50 a month on his $1,000 fine; informed the court of his present financial difficulties; provided three letters of character reference; informed the court that full restitution had been made; mentioned his age (sixty-three) as a factor to be considered in suspension; and asked the court's indulgence in not imposing suspension.

On July 19, 1982, the judgment of the single justice was entered publicly censuring Mr. Alter. The Board and Bar Counsel appealed and seek a modification of the judgment to a two-year or five-year suspension, as initially recommended. The only definitive finding made by the single justice in his memorandum of decision is that Mr. Alter appeared before him and appeared contrite.

Bar Counsel correctly characterizes the offenses of this attorney as involving deceit, misrepresentation, fraud, and misappropriation of funds obtained in a fiduciary capacity. By such apt description Bar Counsel succeeds in bringing this case within the scope of S.J.C. Rule 4:01, § 12 (2),[1] which defines "serious crimes" for purposes of bar discipline proceedings. This court's special concern for the public interest when an attorney has been convicted of a serious crime is reflected in the rule that in such a case an order shall be entered requiring the attorney to show cause why he should not be immediately suspended from the practice of law pending further disciplinary proceedings. S.J.C.

---

[1] Rule 4:01, § 12 (2), inserted by 365 Mass. 696 (1974), reads as follows: "The term 'serious crime' shall include (a) any felony, and (b) any lesser crime (involving conduct of an attorney demonstrating unfitness to practice as a lawyer), a necessary element of which, as determined by the statutory or common law definition of such crime, includes interference with the administration of justice, false swearing, misrepresentation, fraud, wilful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy, or solicitation of another, to commit a 'serious crime.'"

Rule 4:01, § 12 (1), inserted by 365 Mass. 696 (1974). In this context of serious crime, Bar Counsel argues, suspension from the practice of law is required and a public censure is not an appropriate disposition.

We first consider an issue of first impression in this court: What standard of review shall we apply to a decision of a single justice in a bar discipline matter? Unlike nearly all other States, which require that judgment in bar discipline cases shall be by the full court, we in this Commonwealth use the single justice system in such cases. Although the effect upon the respondent lawyer in any discipline case is an important consideration, the primary factor is the effect upon, and perception of, the public and the bar. *Matter of Keenan,* 314 Mass. 544, 547 (1943). Thus, review by the full court, on appeal from the single justice's judgment, must be by a standard which promotes even-handed results in such cases. Accordingly, we think that the full court, in reviewing any disciplinary decision, should inquire whether the judgment is markedly disparate from those ordinarily entered by the various single justices in similar cases.

In applying this standard in this case, our inquiry concerns the dispositions of cases, like this one, where an attorney was convicted of a crime that was "serious" within the meaning of the rule of this court. Our review of the relevant cases, decided since the institution of the Board of Bar Overseers, discloses more than seventy cases where the judgments of the single justices ordered disbarments or suspension from the practice of law. See cases cited and summarized in 1 Mass. Att'y Discipline Rep. (1974-1979) and 2 Mass. Att'y Discipline Rep. (1980-1981). It is clear to us that the Justices in these many cases believed that the public interest was best served, and public confidence in the bar was best preserved, by such results.

Counsel cite seven cases (also shown in 1 Mass. Att'y Discipline Rep. [1974-1979]) where a lawyer was convicted of a serious crime and was not subsequently disbarred or suspended. We think three of these cases are marked by

special mitigating circumstances.[2]  We emphasize the term "special," since it is apparent that "typical" mitigating circumstances have not diverted the Justices from the imposition of disbarment or suspension.  One Justice has aptly listed typical mitigating circumstances as follows:  (1) an otherwise excellent reputation in the community and a satisfactory record at the Bar, (2) cooperation in the disciplinary proceeding and with governmental authorities, (3) the occurrence of the criminal proceedings, (4) the pressures of practice, (5) the conviction as a punishment, (6) the absence of any dishonesty, such as a false tax return, and (7) in the final result, no harm to anyone else by the misconduct.  *Matter of Barkin,* 1 Mass. Att'y Discipline Rep. 18, 21 (1977).  Four of the other cases which are cited can fairly be argued as not marked by special mitigating circumstances.[3]  Arguably, these cases are supportive of the result he urges here, but in numbers they are insignificant and are overwhelmed by the more than seventy cases in which suspension or disbarment has been ordered.

The judgment ordered by the single justice in this case is markedly disparate from the usual results in similar cases. As in many other cases, some typical mitigating circumstances are present here.  No special mitigating circumstances have been shown.  In the public interest, at least a period of suspension from the practice of law is called for. Mr. Alter correctly observes that this court is not bound by the recommendations of either the Board or Bar Counsel. Nevertheless, we give substantial deference to their recom-

[2] *Matter of Levine,* 1 Mass. Att'y Discipline Rep. 183 (1977) (attorney's failure to file income tax return explained by psychiatric evidence). *Matter of Kellogg,* 1 Mass. Att'y Discipline Rep. 164 (1977) (failure to file income tax return explained by psychiatric evidence). *Matter of Quinlan,* 1 Mass. Att'y Discipline Rep. 244 (1978) (public censure imposed after attorney had subjected himself to three-year voluntary suspension, and showed other mitigating circumstances).

[3] *Matter of DiPanfilo,* 1 Mass. Att'y Discipline Rep. 90 (1979). *Matter of Woodrow,* 1 Mass. Att'y Discipline Rep. 309, 311 (1979). *Private Reprimand No. 77-4,* 1 Mass. Att'y Discipline Rep. 368 (1977). *Private Reprimand No. 78-15,* 1 Mass. Att'y Discipline Rep. 402 (1978).

mendations.  In this case, the Board's recommendation that Mr. Alter should be suspended from the practice of law for a period of two years is consistent with usual dispositions in similar cases, and promotes the essential goal of even-handedness.  The judgment is reversed and a new judgment shall be entered in the county court that Mr. Alter is suspended from the practice of law for a period of two years.

*So ordered.*