IN THE MATTER OF THE DISCIPLINE OF AN ATTORNEY
(and two companion cases).

Suffolk.   May 10, 1984. — August 20, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS,* NOLAN, LYNCH, & O'CONNOR, JJ.

*Attorney at Law,* Disciplinary proceeding, Commingling of funds. *Fiduciary.*

In each of three cases the Board of Bar Overseers warrantably found that an
attorney had placed his client's funds in a commingled account and had
used the funds in violation of Rule 3:07, DR 9-102, of the Supreme
Judicial Court, as appearing in 382 Mass. 795 (1981). [833-834]
In view of mitigating circumstances, this court concluded that a private rep-
rimand was appropriate in the cases of three attorneys, each of whom
had placed a client's funds in a commingled account and had used the
funds in violation of Rule 3:07, DR 9-102, of the Supreme Judicial
Court, as appearing in 382 Mass. 795 (1981). [835] WILKINS, J., con-
curring.
Statement of principles relevant in cases concerning attorneys' conduct in
the commingling or misuse of clients' funds which occurs after the date
of this opinion. [835-837]

INFORMATIONS filed in the Supreme Judicial Court for the
county of Suffolk on October 6, 1983, January 23, 1984, and
December 19, 1983, respectively.

The first and second cases were reported by *Wilkins,* J. The
third case was heard by *Abrams,* J.

*Terence M. Troyer,* Assistant Bar Counsel (*Daniel Klubock,*
Bar Counsel, with him).

*Paul R. Sugarman* (*David P. Angueira* with him) for the
respondent in the first case.

*William P. Homans, Jr.,* for the respondent in the second case.

*John O. Mirick* for the respondent in the third case.

*Diane Lund,* for Board of Bar Overseers, submitted a brief.

* Justice Abrams took no part in the consideration or disposition of the
appeal from the judgment in the third case, which was ordered by her in
the county court.

HENNESSEY, C.J. These three cases present the question of the proper discipline to be imposed on an attorney who places his clients' funds in a commingled account and thereafter uses the funds. Cases One and Two were reported to the full court by a single justice in each instance. Case Three is here on the appeal of the Board of Bar Overseers (Board) and Bar Counsel from the disposition entered by the single justice. The Board and Bar Counsel recommend that there shall be a public censure in two of the cases and a six months' suspension from the practice of law in the third case. Nevertheless, because of mitigating circumstances, we conclude that a private reprimand shall be imposed in each of the three cases. Most particularly, we conclude that there was no wrongful intent to harm the clients and the clients were not harmed, and there is also a likelihood that these attorneys were unaware of the seriousness of the misconduct. Additionally, we note that this court has not previously spoken to this issue. We also state, as urged by the Board and Bar Counsel, that attorneys involved in similar missteps, after the date of this opinion, will have a heavy burden to avoid public discipline including, in some circumstances, suspension or disbarment from the practice of law.

In summarizing the findings of the hearing committees in the three cases, we accept the versions of Bar Counsel, even though one of the respondents disagrees, as to his own case, with certain of the major "findings" relied upon by Bar Counsel. We conclude that Bar Counsel's versions are fair summaries. Also, controversy over the recitation of facts is insignificant in light of the disposition we reach (private reprimand) which is the disposition urged by the respondents.

## CASE ONE

The hearing committee found that this respondent had violated S.J.C. Rule 3:07, DR 9-102 (A), as appearing in 382 Mass. 795 (1981), by commingling his funds with those of a client. It did not find any violation of any other disciplinary rule. The hearing committee recommended that the respondent receive

a public censure; the Board and Bar Counsel make the same recommendation.

In October, 1974, the respondent received a $1,799.83 personal injury payment on behalf of a client. This sum included $1,410.40 for hospital expenses. The respondent had received notice of the hospital's lien in 1973 and had told the hospital that it would be paid when his client's case was finally settled. Upon receipt of the $1,799.83, the respondent deposited it in his personal bank account. The account was entitled "Trustee for Clients' Accounts," but the testimony was that it was the respondent's personal account as well.

The respondent remitted to his client $269.62 and retained $129.81 (one third of the remainder after medical expenses) as his fee. The remaining $1,400.40, retained ostensibly to pay the hospital bill, he used as part of his own funds. He did not maintain a balance adequate to meet his obligation. By November 1, 1974, less than one month after receipt of the funds, the account balance was only $217.43.

The respondent brought suit in October, 1974. The case then went awry because the respondent was unable to contact his client, who had moved to New Jersey. By the time he heard from the client in late 1976 or early 1977 the case had been dismissed for failure to answer interrogatories and it was too late to rectify the situation. He forgot about the funds that should have been retained in his account.

There was no intent to convert and no dishonesty or fraud. The case involved "carelessness, forgetfulness and unintentional misappropriation which does not reach the level of dishonesty and deceit found in [*Matter of Alter*, 389 Mass. 153 (1983)]." The respondent's activities were "innocent, yet improper."

The respondent failed to keep proper accounts with respect to the commingled bank account and did not keep track of the balance in the account, relying on the bank to notify him if he was out of funds. His handling of the funds was "remarkably sloppy and improper."

The respondent utlimately accounted fully for the funds in his possession. In 1980, it was called to the respondent's atten-

tion by the hospital that it had never received the funds which had been received by the respondent: the account was thereafter paid by the respondent to the hospital on June 25, 1981. He did not account for the interest that should have been earned on the funds. The respondent has a reputation for truthfulness, fair dealing, integrity, and professional competence.

## CASE TWO

The hearing committee concluded that the respondent had violated S.J.C. Rule 3:07, DR 9-102 (A) and DR 1-102 (A) (6), as appearing in 382 Mass. 769 (1981), by failing to maintain a clients' trust account, but that the respondent had not violated S.J.C. Rule 3:07, DR 1-102 (A) (4), or DR 9-102 (B) (4), as appearing in 382 Mass. 769, 795 (1981). The hearing committee recommended a private reprimand, but the Board rejected this suggestion and recommends a public censure.

In 1980, the respondent received $8,500 in escrowed funds on behalf of a seller of a house. He deposited this money in his general office account. He had no clients' funds account; some months previously he had ceased maintaining a segregated clients' account because he thought that a single account would simplify his bookkeeping. Approximately two weeks after depositing the $8,500 in his office account, the respondent learned that his client had retained new counsel. He promptly sent the new attorney a check for $7,500, with an explanation that the remaining $1,000 was being retained as security for fees due him from the client and her former husband. The respondent's client promptly demanded that he turn over the entire amount and denied any liability for the fees due from her former husband. The respondent rejected this demand.

The respondent used a portion of the $8,500. At no time did the respondent maintain the sum of $8,500 in his account. The account was more than $3,000 overdrawn at the time the $8,500 check was deposited, and payment of the $7,500 check resulted in an overdraft of $654. Nevertheless, the check cleared; the respondent's bank routinely honored his overdrafts

and gave him time to make a deposit. The respondent held the remaining $1,000 for an additional thirty-four days. On twenty-three of those days, the balance in his account was less than $1,000. On seven occasions, the account was in overdraft — once by more than $1,000.

It was undisputed that the respondent used his client's funds. The committee found that there was no intentional use of client's money for the respondent's personal benefit. The committee further found that it was not the respondent's intention to deprive, either permanently or temporarily, the client of money which was rightfully hers.

The committee found that the respondent did not know of the initial overdraft when he deposited the $8,500. The respondent testified that he did not regularly reconcile his bank statements or keep careful track of his balances. He tried to stay within "$1,000 either way." He relied on the bank's practice of paying his overdrafts and giving him time to make a deposit. The committee made no finding about the respondent's knowledge of shortage in his account during the period that his client's funds were in it, but it seems that he at least knew of the overdrafts. The respondent produced two witnesses — a bank employee and himself — to testify that such overdrafts were promptly and regularly brought to his attention.

The respondent ultimately accounted fully for the funds in his possession. The remaining amount held in the account under the terms of the original draft of the purchase and sale agreement was given by the respondent to the buyer. She had paid an additional sum of $1,000 into the escrow account held by the respondent's successor counsel, and she was reimbursed for this amount plus interest. The respondent enjoys a reputation among clients and lawyers for honesty and integrity.

## CASE THREE

Unlike Case One and Case Two, where it was found that each attorney had used his client's funds inadvertently, it was found in this case that the respondent knew that he was using a

client's funds and that he did so intentionally. The hearing committee found that the respondent was guilty of commingling in violation of DR 9-102 (A), and conversion in violation of DR 1-102 (A) (4), (5), and (6). The committee recommended that the respondent receive a private reprimand. The Board concluded that, as in the other two cases, there was no "wrongful intent" to harm the client. Nevertheless, the Board rejected the committee's recommendation and filed an information with the court recommending a six-month suspension. The single justice imposed a private reprimand. The Board and Bar Counsel now recommend a suspension from practice for a period of six months.

The commingling found by the committee consisted of depositing the proceeds of a real estate transaction in a "special account" which was also used for business and personal purposes. The conversion was found on the basis of the fact that the respondent used the funds to pay personal and business expenses as well as obligations to other clients. In addition, the respondent's special account was overdrawn on several occasions.

The respondent represented the sellers of a house and received money on their behalf. After payment of the outstanding mortgage, he was left with $10,636.68, which he received in the form of two checks. He deposited this money in an account which he also used for professional and personal matters, without any differentiation on the source of the funds.

One of the items paid from these funds was an unsecured loan. Although the client had estimated the payoff amount of this loan to be about $7,000, the requisite amount was nearly $8,200. About one week after the closing, the client asked the respondent to send him $1,000, and the respondent did so. Since this left with the respondent a balance insufficient to pay off the unsecured loan, the respondent told the client that the respondent would keep the loan "current" until the client returned the $1,000. The respondent did so, although the client never returned the $1,000.

The respondent did not maintain enough money in his special account at all times to have been able to pay off the home

improvement loan from that account had he received a repayment of the $1,000 from the client. The respondent used the funds received as attorney for the client to pay personal and business expenses as well as obligations to other clients. In addition, the respondent's special account was overdrawn on several occasions during the period from July, 1980, to November, 1981. The committee found that the respondent had no authority to use the client's funds deposited in his special account for his own personal use. When the bank demanded full payment in November, 1981, the respondent paid the loan in full. As a result of the actions, he suffered a loss of $1,368.29. He did not take any legal fee.

1. *The Instant Cases.*

The Board, based upon the findings of the hearing committees, was warranted in concluding, and did conclude, that in all three cases commingling and "using" of clients' funds had taken place. Consequently, the Board warrantably concluded in all three instances that there was a violation of DR 9-102 (A). In Case Three only, the Board found that there was also a violation of DR 1-102 (A) (4), (5), and (6).[1]

The crucial facts common to all three cases may be briefly stated. All three respondents are sole practitioners. Comming-

---

[1] Rule 3:07, DR 9-102, of the Supreme Judicial Court, as appearing in 382 Mass. 795 (1981), reads in part as follows:

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the State in which the law office is situated and no funds belonging to the lawyer or the law firm shall be deposited therein except as follows: (1) Funds reasonably sufficient to pay bank charges may be deposited therein. (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

Rule 3:07, DR 1-102, of the Supreme Judicial Court, as appearing in 382 Mass. 769 (1981), reads in part as follows:

"(A) A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. (5) Engage in conduct that is prejudicial to the administration of justice. (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

ling was shown in that none of them maintained a clients' trust account. Instead each deposited his clients' funds in an account in which the attorney's own personal and business funds were also deposited. "Using" of the clients' funds was shown in that, in each case, the balance in this account fell below the amount that should have been held for clients.

Case Three differs from the other two cases in that it is the one case in which the Board reports that the attorney intentionally used his client's funds (the Board states in its brief that the use was "conscious and calculated" but without "wrongful intent"); the conclusion in the other two cases is that the use was negligent and inadvertent. In view of the disposition we reach, we need not consider whether the Board's conclusions as to DR 1-102 (A) (4), (5), and (6), are consistent with the Board's other conclusions, in particular that the attorneys acted without wrongful intent. Case Three also differs in that a single justice has entered an order for a private reprimand; in each of the other cases, the matter is here upon a report without decision by a single justice.

In every bar discipline case one of the principal aims of the court is to ensure that the disposition imposed should not be markedly disparate from the dispositions imposed on attorneys in similar cases. *Matter of Alter,* 389 Mass. 153, 156 (1983). However, as to commingling, there have been few cases in this Commonwealth to give substance to this standard, and those few cases are substantially different in their facts from the instant cases.[2]

---

[2] Single justices of this court have, of course, imposed serious sanctions on attorneys who wilfully appropriated clients' funds with intention to deprive the clients of the funds permanently or temporarily. Bar Counsel cites one case which is arguably similar to the instant cases in which a single justice imposed a suspension from practice (*Matter of Swanstrom,* 1 Mass. Att'y Discipline Rep. 282 [1978]), but it is clear that there were aggravating circumstances in that case, including deception of the client by the attorney. The respondents cite several cases, involving commingling, and also arguably similar to the instant cases, in which the Board recommended private reprimand. On the other hand, Bar Counsel cites many cases from other jurisdictions which fully support the Board's and Bar Counsel's statements of policy, *infra,* as to commingling violations.

As will be seen *infra,* the Board and Bar Counsel urge that public discipline should ensue in all cases of commingling and use for personal purposes of clients' funds, and that the discipline should encompass suspension or disbarment from the practice of law where the use of a client's funds is intentional or, more serious, with wrongful intent.

We read. these recommendations with respect, as we demonstrate later in this opinion. Nevertheless, we impose private sanctions here in all three cases because of mitigating circumstances common to all three cases. There was no intention to deprive the clients permanently of their funds, or even to retain the funds after a rightful request for their return. As the Board puts it, there was no "wrongful intent." The clients in each case were not injured and did not complain; the respondent was responsible and fully performed the services for which he was retained; he never lied to his clients. In each case the attorney cooperated with the disciplinary authorities and gave objective indication that the offenses would not be repeated in the future.

Before the time of these offenses (1974 in one case; 1980 in the others), indeed up to the time of this opinion, this court has never spoken to the seriousness of these rules dealing with clients' funds. There have been, and will be, few cases of unethical conduct where we consider it relevant that an offending attorney was not aware of the disciplinary rules or their true import. In these three cases, where the attorneys intended no harm to their clients, and no harm was done to the clients, we think fairness will be best served with private reprimands.

2. *Future Cases.*

We turn now to a statement of principles which will be relevant in all cases concerning attorneys' conduct which occurs after the date of this opinion.

The Board of Bar Overseers has placed in the record of these proceedings a statement of policy which it urges in these and similar cases. It is the settled position of the Board that public discipline is always merited in the case of a lawyer who has commingled clients' funds and the lawyer's funds and who has then used the commingled funds for his or her own pur-

poses. It is implied in the Board's statement that, in any such case where it is shown, additionally, that there is "wrongful intent," suspension or disbarment from the practice of law is appropriate, with the extent of the sanction dependent upon the extent of the exacerbating facts.

The Board states as follows: "There are two reasons for the Board's position. First, use of a client's funds by a lawyer violates one of the most fundamental precepts of our profession. We hold ourselves out to the public as fiduciaries. As such, we have an obligation to treat our clients' funds as property entrusted to us, and to deal with those funds accordingly. Any action by a lawyer which is contrary to this principle weakens the confidence of the public in all of us. Second, the first step in the process which in these cases led to the personal use of the funds — the act of commingling of the client's funds with the lawyer's own funds — is itself viewed by the Board as meriting a private reprimand, the most serious form of private discipline available. If the Board is to succeed in developing disciplinary sequences based upon the seriousness of disciplinary offenses and whether there are multiple offenses rather than a single one, distinctions such as this one are critical."

Bar Counsel states a position consistent with that of the Board, but he states it even more definitively. He urges that "standard" sanctions should be adopted as follows:

> Intentional commingling of clients' funds with those of an attorney should be disciplined by private reprimand. Unintentional, careless use of clients' funds should be disciplined by public censure.

> Intentional use of clients' funds, with no intent to permanently or temporarily deprive the client, and no actual deprivation, should be punished by a term of suspension of appropriate length.

> Intentional use, with intent to deprive or with actual deprivation, should be disciplined by disbarment or indefinite suspension.

The views of the court may be stated succinctly. We concur generally in the Board's and Bar Counsel's statements of prin-

ciples. The Board has not overstated the serious nature of commingling and the related offenses which grow out of that practice. Nor has the Board exaggerated in the slightest its appraisal of these unethical practices as eroding public confidence in the Bar. We add only one modifying thought: Each case must be decided on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances. We do not adopt a posture of mandatory sanctions in such cases, but we do state that an offending attorney, in any case where the misconduct occurs after the date of this opinion, will have a heavy burden to demonstrate to the court that sanctions as recommended here by the Board and Bar Counsel should not be imposed.[3]

Cases One and Two are remanded to the county court where judgments are to be entered directing the Board to impose a private reprimand in each case. The judgment of the single justice in Case Three is affirmed.

*So ordered.*

WILKINS, J. (concurring). If this were a matter in which I were to permit my own opinion to control my vote, I would concur with the Board of Bar Overseers and Bar Counsel that public discipline is in order in each case.[1] I believe, however, that in matters of bar discipline individual Justices of this court should adhere to the view of the majority of the Justices in order to provide, as far as possible, uniform discipline for substantially similar misconduct. I, therefore, join in the result reached by the court in each case.

---

[3] Nor does this statement imply that, even as to conduct which occurred before the date of this opinion, more serious sanctions than that imposed in the instant cases may not be in order.

[1] The Canons of Professional Ethics, adopted by the American Bar Association in 1908, provided in Canon 11 that "[m]oney of the client or collected for the client . . . should not under any circumstances be commingled with his own or be used by him." See R.L. Wise, Legal Ethics 425 (2d ed. 1970). These canons were long recognized "as establishing wholesome standards of professional action." *Matter of Cohen,* 261 Mass. 484, 487 (1928).