## IN THE MATTER OF PAUL H. DERAGON.

Suffolk. March 7, 1986. — July 23, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Attorney at Law,* Disciplinary proceeding, Commingling of funds, Indorsement of check. *Fiduciary.*

On appeal by the Board of Bar Overseers and the Bar Counsel from a judgment of a single justice of this court imposing public censure on an attorney at law who, in three instances, had placed his clients' funds in a commingled account and thereafter used the funds and, in one instance, had indorsed his clients' signatures on a check without express permission to do so, the full court affirmed the judgment, concluding, in light of the circumstances of the attorney's acts, and other mitigating factors, that the discipline imposed by the single justice was appropriate and not markedly disparate from the judgments entered by single justices in similar cases. [130-133] WILKINS, J., with whom HENNESSEY, C.J., joins, dissenting.

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on July 2, 1985.

The case was heard by *O'Connor,* J.

*Terence M. Troyer,* Assistant Bar Counsel (*Daniel Klubock,* Bar Counsel, with him).

*Michael E. Mone* for Paul H. Deragon.

NOLAN, J. This is an appeal from a judgment entered by order of a single justice of this court on July 25, 1985, imposing a public censure on Attorney Paul H. Deragon (respondent). The relevant facts and the procedural history of this case are summarized as follows.

On March 1, 1984, Bar Counsel filed and served upon the respondent a petition for discipline containing three counts of alleged professional misconduct.

In count one it was alleged that on or about June 18, 1981, the respondent opened a clients' fund account at the Arlington

Five Cents Savings Bank.[1] Into this account, the respondent made a single deposit of $154,755.67, which amount represented the proceeds from the sale of a client's marital home. The respondent was to have held these funds in escrow until a final property settlement was reached in the client's pending divorce.

It was further alleged that, between June 22 and November 18, 1981, the respondent transferred $83,000 of his client's money from the Arlington account into his "regular clients' account." This account was maintained at the Depositors Trust Company in Lexington. The respondent then, without his client's knowledge or consent, used the transferred funds to pay money due other clients and to meet his office operating expenses.

In count two of the petition, it was alleged that the respondent did not pay the share of money that was ultimately due to this client ($80,000) until one year after the client and her former husband had signed a separation agreement. It was further claimed that the respondent used funds belonging to other clients to satisfy the $80,000 payment.

Count three of the petition alleged that on December 3, 1982, the respondent came into possession of a deposit in the amount of $7,000 which was to be held in escrow for two clients pending the sale of real estate owned by them in Arlington. The closing date for the sale was January 17, 1983. The respondent attended the closing on behalf of his clients and received a check, payable to the clients, in the amount of $6,903.39. The respondent indorsed the check without the express consent of the clients and made a deposit of more than $13,000 into his regular clients' account. Prior to this deposit, the account was overdrawn by $9,750.74. On January 27, 1983, after numerous requests by the clients, the respondent issued them a check for $13,183.39. The check was returned by the bank for insufficient funds on February 1, 1983. The respondent did not repay the clients until February 14, 1983.

---

[1] The account was entitled "Paul H. Deragon, Esquire Clients Fund."

On June 26, 1984, and July 10, 1984, a hearing committee of the Board of Bar Overseers (committee) heard testimony concerning the above described allegations from the respondent and the two clients he represented in the sale of the Arlington property. The committee made findings of fact with respect to each count in the petition. These findings were consistent with the allegations in the petition. With respect to the indorsement of the check for $6,903.39, the committee found that "[a]lthough there was no express authority to endorse the check Respondent could reasonably have inferred that he had implied authority." Based on its factual findings, the committee determined that the respondent had violated the following Disciplinary Rules: S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), as appearing in 382 Mass. 769 (1981) (conduct involving misrepresentation); DR 1-102 (6) as appearing in 382 Mass. 770 (1981) (conduct adversely reflecting on fitness to practice law); S.J.C. Rule 3:07, Canon 9, DR 9-102 (B) (3), as appearing in 382 Mass. 796 (1981) (maintenance of records and accounting to clients); and DR 9-102 (B) (4), as appearing in 382 Mass. 796 (1981) (prompt payment to a client of funds to which the client is entitled).

The committee also ruled that "[a]lthough there was no commingling in the strict sense of the word because Respondent kept the funds in separate accounts, there was in fact commingling because Respondent used the funds as though they were his own to pay personal expenses. However, there was no conversion because all the funds were repaid and there was no intent to permanently deprive the client[s]." The committee, after recognizing certain mitigating factors, issued a report and recommended a public censure.

Bar Counsel appealed the committee's recommendation to a hearing panel of the Board of Bar Overseers (panel). Bar Counsel requested that an indefinite suspension be imposed on the respondent. The panel determined that the committee's ruling with respect to the conversion issue was based on an error of law. See *Matter of Coughlin,* 1 Mass. Att'y Discipline Rep. 79, 81 (1978). The panel issued its own report and recommended that the respondent be suspended from the practice of law for a period of two years.

On June 10, 1985, the Board of Bar Overseers voted to accept the panel's report as its own and to accept the panel's recommendation for discipline. The Board also voted to file an information with this court consistent with the panel's recommendation. On July 25, 1985, a single justice of this court imposed a public censure on the respondent. The Board and Bar Counsel each appealed the decision of the single justice to the full court. We now address the issues presented.

1. *Commingling*. In *Matter of Alter,* 389 Mass. 153 (1983), we enunciated the standard to be applied in reviewing a single justice's judgment in a bar discipline case. We stated that "in reviewing any disciplinary decision, [we shall] inquire whether the judgment is markedly disparate from those ordinarily entered by the various single justices in similar cases." *Id.* at 156.

Unquestionably, commingling offenses are serious in nature. Imposing a public discipline helps to restore the public confidence which has been eroded by those practices. The degree of public discipline depends on a consideration of the nature of the offenses and the circumstances as well as factors in mitigation.

In the appendix to his brief, Bar Counsel has provided us with a list of approximately seventy bar discipline cases, and argues that discipline consisting of either disbarment, indefinite suspension, or a term of suspension is "very much the norm" for attorneys who intentionally misuse clients' funds. It would not be productive for us to attempt to distinguish each of these cases. However, we note that the facts in many of the cases cited by Bar Counsel present situations more egregious than the instant case. See, e.g., *Matter of Bellucci,* 2 Mass. Att'y Discipline Rep. 13 (1980). Moreover, in the majority of the cases cited, Bar Counsel's brief indicates that full restitution was not made to the clients whose funds were misused. See *Matter of Sarapas,* 3 Mass. Att'y Discipline Rep. 178 (1982).

In this case, the most important factor is the absence of any wrongful intent. The allegation is made that the respondent made use of clients' funds and delayed distributing them to the clients, in one case for over a year. The inference is that the delay was designed in order to benefit the respondent. That

is not accurate. The monies were received in the divorce case and partially distributed shortly after a settlement agreement had been executed. The balance was held in escrow during the course of further litigation (motion to vacate and amend agreement) and distributed to the respondent's client when the divorce became absolute. Moreover, at the time the respondent volunteered this information, the client was not a complainant to the Board. We do not mean to imply that the respondent's activities do not rise to the level of serious misconduct. Such actions by a member of the bar cannot and will not be condoned by this court under any circumstances. Nor do we mean to suggest that restitution in and of itself is sufficient to purge an attorney of such an offense. We do, however, reaffirm our position that "[e]ach case must be decided on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances." *Discipline of an Attorney,* 392 Mass. 827, 837 (1984).

The discipline imposed by the single justice is appropriate and is not markedly disparate from the discipline entered in similar cases. See, e.g., *Matter of Lisook,* 3 Mass. Att'y Discipline Rep. 132 (1983). This court in *Discipline of an Attorney, supra,* first addressed the issue of what discipline should be imposed on an attorney who places clients' funds in a commingled account and thereafter uses the funds. We concluded that, in the circumstances of each of the three cases then considered, a private reprimand was an appropriate sanction. We also noted, however, that "attorneys involved in similar missteps, after the date of this opinion, will have a heavy burden to avoid public discipline including, in some circumstances, suspension or disbarment from the practice of law." *Id.* at 828.

In recommending a public censure in this case, the hearing committee observed that any difference between this case and Case Three in *Discipline of an Attorney, id.,* is "a matter of degree." In Case Three, it was determined that the respondent attorney was intentionally using a client's funds to "pay personal and business expenses as well as obligations to other clients." 392 Mass. at 833. In the same case, the respondent's special account was found to be overdrawn on several occasions while

the client's funds were being misused. *Id.* The hearing committee determined that the respondent had no authority to use his client's funds and that he was guilty of commingling in violation of DR 9-102 (A), and conversion in violation of DR 1-102 (A) (4), (5), and (6). The hearing committee recommended that the respondent receive a private reprimand. The Board and Bar Counsel recommended a six-month suspension. A single justice of this court entered an order imposing a private reprimand which was affirmed on appeal. *Discipline of an Attorney, supra* at 837.

We recognize, as pointed out by the respondent, that there are many similarities between Case Three, *id.* and this case. Bar Counsel, however, argues that there is a significant, distinguishing factor that must be considered. In *Discipline of an Attorney, id.* at 835, we noted that "[t]he clients . . . were not injured and did not complain." Bar Counsel argues that the respondent's clients were, in fact, injured and did complain. We acknowledge the difference but recognize it as a matter of degree.

2. *Indorsement of a check.* The leading case addressing the issue of what discipline should be imposed on an attorney who indorses his client's signature on a check which is payable to his client without express permission to do so is *Discipline of An Attorney,* 2 Mass. Att'y Discipline Rep. 119 (1980). In that case, we issued a private reprimand only, but suggested that threat of public censure generally would ensure that all lawyers will know that it is a violation of a lawyer's professional responsibility to sign a client's name to a check without such express permission. We think the instant case requires a harsher sanction than a private reprimand. Unlike the attorney in *Private Reprimand No. PR-83-8,* 3 Mass. Att'y Discipline Rep. 242 (1983), the respondent did not promptly disburse the proceeds of the check to his clients. The initial delay in distributing the real estate proceeds arose from the clients' inability, due to family illness, to attend the closing or receive the check. The ensuing conversation between one of the clients and the attorney indicates an acquiescence, if not an express agreement, for the respondent to consolidate the two checks, deduct his

fee and issue another check to the clients. This presupposes a reasonable amount of time to perform these functions and prepare a bill. Any delay attributable to time necessary to perform certain tasks which are customary and usual in the practice of law is not necessarily offensive to the Canons; however, the delay caused by the overdraft and reissuance does violate those precepts. Likewise, the present case is distinguishable from *Private Reprimand No. PR-79-16,* 1 Mass. Att'y Discipline Rep. 428 (1979), where the attorney indorsed his client's name on a check in *reliance* on *prior authorization* to do so. Here, the clients testified that they had not authorized anyone to place their signatures on checks, and the respondent never told his clients that he was going to sign their names, or even that the check was made payable to them.

In view of the circumstances of the respondent's acts, it becomes apparent that he took advantage of fortuitous delays rather than having created them affirmatively. Thus, he acted from weakness rather than from malevolence. Additionally, at the time of these offenses, this court "had not yet spoken to the seriousness of . . . rules dealing with clients' funds" or their "true import." *Discipline of an Attorney,* 392 Mass. 827, 835 (1984). In light of this and other mitigating factors such as restitution before the initiation of any complaints, complete cooperation with the board, a prior unblemished record, and high personal and professional reputations both in the public and professional communities, leads to the conclusion that a public censure does satisfy the interests of fairness and justice.

The judgment of the single justice ordering public censure of the respondent is affirmed.

*So ordered.*


WILKINS, J. (dissenting, with whom Hennessey, C.J., joins). The modest discipline of public censure the court imposes threatens the public's respect for the legal profession and will impair the public's confidence in this court's regulation of the bar.

The misconduct of the attorney in this case far exceeds the relatively limited misconduct of the attorney in Case Three discussed in *Discipline of an Attorney,* 392 Mass. 827 (1984). Bar Counsel points to meaningful differences, most of which the opinion of the court ignores. *Ante* at 130-131. To characterize those differences as a matter of degree simply fails to deal with their substantive significance. The attorney intentionally used more than $80,000 of one client's funds to pay off other clients and to pay office expenses. His misuse of various clients' funds continued over more than a year until complaint was made against him. Funds of some clients were used to repay others. The attorney has not made full restitution because he has not paid interest on the clients' funds he misappropriated (and, concomitantly, he had the free use of the funds during periods of relatively high interest rates). A panel of the Board of Bar Overseers which considered this matter concluded properly that the attorney converted his clients' funds. To say, as the court does, that there was no wrongful intent is simply incorrect (*ante* at 130), just as it is wrong for the court to rely on facts not found by the full board, its panel, or the hearing committee.

I would accept the recommendation of the full Board of Bar Overseers and Bar Counsel that the attorney be suspended from the practice of law for two years. Quite frankly, if this case had come before me as a single justice, I would never have guessed that a majority of my colleagues would have favored public censure over a suspension from the practice of the law. Discipline more serious than a public censure has been the general practice in cases involving a conversion of clients' funds and an absence of full restitution.