IN THE MATTER OF REUBEN S. DAWKINS.

Suffolk. December 2, 1991. - March 2, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ

*Attorney at Law*, Disciplinary proceeding, Commingling of funds, Suspension.

A six-month suspension from the practices of law was the appropriate discipline to be imposed on an attorney who deliberately misused a client's funds to pay his own personal and business-related expenses and who temporarily deprived the client of those funds, with the result that the client suffered actual harm, namely, his being subjected to lawsuits and · the issuance of a capias. [92-97] NOLAN, J., dissenting.

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on March 6, 1991.

The case was heard by *Lynch*, J.

The case was submitted on briefs.

*Arnold R. Rosenfeld*, Bar Counsel, *& Nancy E. Kaufman*, Assistant Bar Counsel.

*Francis J. Harney* for the respondent.

ABRAMS, J. At issue is the appropriate discipline to impose on an attorney who deliberately misused client funds, and thereby caused his client to be temporarily deprived of his liberty pursuant to a capias. The Board of Bar Overseers (board) filed an information in the Supreme Judicial Court for the county of Suffolk recommending (by a five-to-four vote)[1] that the respondent, Reuben S. Dawkins, be publicly

---

[1] Bar counsel initiated disciplinary proceedings against the respondent, Reuben S. Dawkins, in September, 1989. The hearing committee of the Board of Bar Overseers (board) conducted a hearing on the petition for discipline in February of the next year. In its findings of fact, conclusions of law, and recommendation for discipline, filed on April 4, 1990, the hearing committee concluded that, although Dawkins had violated S.J.C. Rule

censured. A single justice entered a judgment publicly censuring the respondent. Bar counsel appeals. We reverse. We order a six-month period of suspension.

*Facts.* Dawkins was retained by Kevin Miranda to represent him in connection with an injury incurred in an automobile accident. Dawkins represented Miranda on a contingent fee basis, under which he was to retain one-third of the recovery as his fee. Dawkins settled the case, receiving two checks in the amount of $10,000 each from two insurance companies. Dawkins deposited the $20,000 into his client funds account, and sent to Miranda a check for $2,692.67, as well as an accounting showing payment to Miranda's medical providers, including payment of $3,300 to Cape Cod Hospital.[2]

Contrary to the representation in the accounting, Dawkins had not paid Miranda's medical bills. Instead, he used the funds to pay "personal and business related expenses." He later testified that he had hoped to replace Miranda's funds with a fee he expected to receive from a client in a criminal matter, but was unable to do so because the fee was never paid.

In late 1987, Cape Cod Hospital commenced a collection action against Miranda for the unpaid medical bill. Miranda

---

3:07, Canon 1, DR 1-102 (A) (1) and (6), as appearing in 382 Mass. 769 (1981), S.J.C. Rule 3:07, Canon 9, DR 9-102 (A) and (B), as appearing in 382 Mass. 795 (1981), and S.J.C. Rule 4:01, § 3, as amended by 382 Mass. 820 (1981) (see Appendix), in light of certain mitigating factors, a private reprimand was the appropriate sanction. The hearing committee also demanded acceptable proof within three months of the reprimand that Dawkins was managing his client fund accounts in conformity with the disciplinary rules.

Bar counsel appealed from the hearing committee report, and the parties presented oral argument to the appeal panel of the board. The appeal panel endorsed the hearing committee's recommendation, with one dissenting member calling for Dawkins's temporary suspension. The board voted five to four in favor of adopting the panel's report with the recommendation that Dawkins be publicly censured. The dissenting members believed a period of suspension was required.

[2]Shortly thereafter, Dawkins sent Miranda a check for $6,666.66, representing the amount recovered from the second insurance company, less Dawkins's fee.

was brought before the court on a capias.[3] At his appearance, he produced Dawkins's accounting showing payment to Cape Cod Hospital and other medical providers. The District Court judge continued the case and attempted unsuccessfully to communicate with Dawkins. About one month later, Dawkins learned that the judge was concerned about his disposition of Miranda's funds. Even after so learning, Dawkins did not communicate with either the court or Miranda, and did not pay over the funds. In late March, the judge requested that bar counsel investigate Dawkins's conduct. Dawkins subsequently received a letter from bar counsel asking for Dawkins's comments on the complaint. Dawkins turned the letter over to his attorney. His attorney, not his counsel on this appeal, did not respond to bar counsel. About one month later, bar counsel sent Dawkins another letter, directing him to respond to the complaint within ten days. Once again, Dawkins turned the letter over to his attorney, and, once again, his attorney failed to respond. Dawkins finally appeared at the office of bar counsel in response to a subpoena.

Cape Cod Hospital commenced a civil action against Dawkins in July, 1988. Dawkins defaulted in that action, and judgment was entered against him. Cape Cod Hospital filed an action for supplementary process, and, after Dawkins again failed to appear, a capias issued. Dawkins then appeared in court and was ordered to make payments on the judgment. Dawkins paid the judgment in full on September 19, 1989.

*A period of suspension is the appropriate discipline.* Bar counsel relies on *Matter of the Discipline of an Attorney*, 392 Mass. 827 (1984), for his contention that a period of

---

[3]Although a capias had issued in Cape Cod Hospital's supplementary process action against Miranda, Miranda's appearance in court was pursuant to a capias issued in a separate proceeding brought by Cape Cod Anesthesia Associates, another of Miranda's medical providers who had not been paid due to Dawkins's withholding of the funds. The lawyer for Cape Cod Hospital simply happened to be in court on the day that Miranda appeared in the Cape Cod Anesthesia proceedings.

suspension is required. In that case, we emphasized the serious nature of commingling and converting client funds, practices which "violate[ ] one of the most fundamental precepts of our profession," *id.* at 836, and "erod[e] public confidence in the Bar." *Id.* at 837. We stated that, although we would not "adopt a posture of mandatory sanctions in such cases [of commingling and misusing client funds] . . . an offending attorney, in any case where the misconduct occurs after the date of this opinion, will have a heavy burden to demonstrate to the court that sanctions as recommended here by the Board and Bar Counsel [public censure for unintentional, careless use of client funds; term of suspension of appropriate length for intentional use with no intent to deprive and no actual deprivation; and disbarment or indefinite suspension for intentional use with intent to deprive or actual deprivation] should not be imposed." *Id.* at 837. There is no dispute that Dawkins deliberately misappropriated Miranda's funds, and temporarily deprived Miranda of those funds. Since *Matter of the Discipline of an Attorney*, *supra*, suspension, rather than public censure, has been the sanction for deliberate misuse of client funds.[4] Dawkins thus bore the heavy bur-

---

[4]See, e.g., *Matter of Worthen*, S.J.C. No. 90-2BD (Mar. 1, 1990) (indefinite suspension for converting bail funds with intent temporarily to deprive and for delaying repeated requests and agreement to repay; offered as mitigation death of father, dissolution of marriage, and failure of his private practice at time of misconduct); *Matter of Silvey*, S.J.C. No. 89-33BD (Oct. 26, 1989) (indefinite suspension for conversion of $3,000 and failure to cooperate with bar counsel despite full restitution and respondent's alcoholism at the time of the events); *Matter of Martin*, 5 Mass. Att'y Discipline Rep. 238 (1988) (two-year suspension for commingling and converting client funds with no intent permanently to deprive, even though full restitution had been paid and respondent suffered from alcoholism); *Matter of Munroe*, 4 Mass. Att'y Discipline Rep. 103 (1985) (temporary deprivation of estate funds warrants indefinite suspension despite full restitution and no prior record of discipline); *Matter of Coughlin*, 1 Mass. Att'y Discipline Rep. 79, 80-81 (1978) (indefinite suspension appropriate for temporary deprivation of funds, even if there has been full restitution and respondent has "otherwise unblemished record at bar").

Intentional use of client funds, even without actual deprivation, generally has been enough to warrant suspension. See, e.g., *Matter of Cardia*, S.J.C. No. 90-48BD (Dec. 30, 1991) (two-year suspension for mishandling cases and intentional use of client funds with no intent to deprive, even

den of showing that he should not be suspended for some period.

In meeting his burden, Dawkins relies on three cases to support his claim that public censure is the appropriate sanction: *Matter of Driscoll*, 410 Mass. 695 (1991), *Matter of Deragon*, 398 Mass. 127 (1986), and *Matter of McDermott*, S.J.C. No. 86-41BD (Jan. 10, 1989). We think that these cases are not controlling and clearly are distinguishable. In none of these cases did the client suffer actual harm. Further, in *McDermott*, neither the hearing committee nor the board found that McDermott intentionally had used client funds. Rather, the record filed with the information and the panel both characterize McDermott's use of the funds as "careless." Dawkins, on the other hand, was found to have intended to deprive his client of funds, albeit temporarily. Further, in *Matter of Driscoll*, *supra* at 702, there was no actual deprivation of funds, and no harm came to Driscoll's clients as a result of Driscoll's actions. In marked contrast, in this case there was actual deprivation, and Dawkins's client suffered nontrivial harm (e.g., being subjected to lawsuits and issuance of capias). In the *Deragon* case, the attorney's delay in disbursing funds was not "designed in order to benefit the respondent." *Id.* at 130. Dawkins admits that he used Miranda's funds to pay "personal and business related expenses." Driscoll and Deragon, unlike Dawkins, never had "been the subject of any other Bar complaint." *Matter of Driscoll*, *supra* at 697. *Matter of Deragon*, *supra* at 133. Whereas Deragon made restitution before the initiation of the complaint, *Matter of Deragon*, *supra*, Dawkins not only

---

though lawyer had ability to meet obligations to client and substantial personal difficulties); *Matter of Elliot*, S.J.C. No. 90-3BD (Feb. 23, 1990) (three-month suspension imposed on attorney who intentionally used client funds, even though he had no intent to deprive); *Matter of Callahan*, 5 Mass. Att'y Discipline Rep. 49 (1988) (two-year suspension for commingling).

We recognize that some of the above cases involve multiple offenses; nevertheless, we do not believe that a misdeed as serious as intentional use of client funds must be repeated before a period of suspension is warranted.

ignored the judge's inquiries and failed to restore the funds promptly, but also did not pay the hospital until more than two and one-half years after the hospital should have been paid and after bar counsel filed a petition for discipline. Cf. *Matter of Martin*, 5 Mass. Att'y Discipline Rep. 238, 239 (1988) ("The fact that restitution has been made, but only after the attorney was caught, carries no weight . . . in demonstrating that the attorney had reformed his ways"). Finally, at the time of Deragon's offenses, "this court 'had not yet spoken to the seriousness of . . . rules dealing with clients' funds' or their 'true import,'" *Matter of Deragon, supra*, quoting *Matter of the Discipline of an Attorney, supra* at 835, and accordingly was reluctant to impose stricter sanctions.

We permit more lenient sanctions in cases in which "special" mitigating circumstances exist. *Matter of Alter*, 389 Mass. 153, 156-157 (1983). The board found circumstances which militated against imposing the sanction of suspension. These circumstances included: (1) Dawkins promptly paid Miranda the money due him from the tort claim settlement; (2) Dawkins at all times acknowledged his liability for payment of the sums due Miranda's medical providers; (3) Dawkins had never before been charged with conversion of funds; (4) Dawkins did not intentionally fail to cooperate with bar counsel's investigation;[5] (5) Miranda did not complain about Dawkins's behavior; and (6) Dawkins had devoted his practice to assisting disadvantaged clients.

None of these factors mitigates the harm in this case so as to warrant public censure rather than a period of suspension. At best, they are neutral. In *Matter of Pike*, 408 Mass. 740, 745 (1990), citing *Matter of Alter*, 389 Mass. 153, 157

---

[5]The board found that Dawkins's failure to cooperate was unintentional: Dawkins "turned the matter over to his counsel . . . who due to his own illness failed to respond to Bar Counsel on respondent's behalf." Bar counsel does not argue that the board should have considered this factor in imposing discipline. We therefore do not discuss this failure. We note, however, that attorneys under investigation are required to cooperate with bar counsel.

(1983), we noted that the "absence of prior misconduct by the attorney carries little or no weight." The fact that Dawkins paid Miranda promptly is irrelevant. We do not expect attorneys to withhold money due their clients, lie, convert client funds, or obstruct investigations; we are not so pessimistic about the ethics of lawyers as to conclude that a lawyer who conforms to the expected standard of conduct in some respects thereby has established mitigating circumstances.

Further, because Miranda may not have had the incentive to lodge a formal complaint, we do not consider the absence of such a complaint a mitigating factor. By the time Miranda became fully aware of Dawkins's misdeed when he was brought into court on a capias, he already had suffered the worst consequences of that misdeed. At that point, when Miranda produced Dawkins's accounting, the judge properly focused the inquiry on Dawkins rather than on the client. Moreover, disadvantaged persons like those served by Dawkins often may not have the resources to pursue a formal complaint.

The board believed it irrelevant that Dawkins had been publicly censured for unrelated matters. *Matter of Dawkins*, 3 Mass. Att'y Discipline Rep. 52, 53 (1983). That was error. The existence of prior discipline, unlike the absence of prior discipline, is a "substantial factor in selecting the level of discipline." See *Matter of Bryan*, 411 Mass. 288, 291 (1991), and cases cited. We consistently have considered a record of past misconduct, even if unrelated to the current charges, in determining the appropriate sanction. See, e.g., *Matter of McInerney*, 389 Mass. 528, 532-533 (1983) (prior improper argument to jury, fee in divorce case, and trial tactics considered in discipline matter involving allegation that attorney wrongfully procured execution of deed from woman under conservatorship); *Matter of Aronson*, 3 Mass. Att'y Discipline Rep. 12, 18 (1982) (single justice considered record of private reprimand for unrelated matter in rejecting respondent's motion to revise and revoke indefinite suspension); *Matter of Saab*, 406 Mass. 315, 327 (1989) (endorsing sin-

gle justice's consideration of respondent's prior multiple violations of disciplinary rules); *Matter of Paris*, 5 Mass. Att'y Discipline Rep. 286, 288 (1987) (public censure for unrelated conduct "relevant to the appropriate sanction"). See also ABA Standards for Imposing Lawyer Sanctions § 9.22 (a) (1986) (prior record of discipline is factor in aggravation).

As for the last mitigating factor, while it is to Dawkins' credit that he largely devoted his practice to disadvantaged clients, that fact alone does not overcome the harm he visited upon on the particular client involved in this case.

In this case, imposing any sanction less severe than a period of suspension would "undermine[ ] the clear standards of the [*Matter of the Discipline of an Attorney*] case, and, in the process . . . diminish[ ] the court's credibility in an area where the public interest requires steadfast protection of clients' rights." *Matter of Driscoll, supra* at 705 (Greaney, J., dissenting). Public censure also would be markedly disparate from similar cases. Dawkins has not established any reason why discipline in his case should be markedly disparate. We therefore conclude that the board erred in its recommendation of public censure and the single justice should not have entered a judgment consistent with the board's recommendation. Accordingly, we reverse the judgment and direct that a judgment be entered in the Supreme Judicial Court for the county of Suffolk ordering a six-month period of suspension from the practice of law.[6]

*So ordered.*

---

[6]In view of our decision, we deny Dawkins's request that he be awarded costs. See G. L. c. 211, § 10 (1990 ed.).

APPENDIX TO THE OPINION OF THE COURT.

Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102 (A) (1) and (6), as appearing in 382 Mass. 769 (1981), states that "[a] lawyer shall not [v]iolate a Disciplinary Rule [or] [e]ngage in any other conduct that adversely reflects on his fitness to practice law."

Supreme Judicial Court Rule 3:07, Canon 9, DR 9-102 (A) and (B), as appearing in 382 Mass. 795 (1981), states: "(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the State in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay bank charges may be deposited therein. .

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

"(B) A lawyer shall:

"(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

"(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

"(3) Maintain complete records of the handling, maintenance and disposition of all funds, securities and other properties of a client coming into the possession of the lawyer from the time of receipt to the time of final distribution; preserve such records for a period of ten years after final distribution of such funds, securities or other properties; and render appropriate accounts to the client regarding them.

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

Supreme Judicial Court Rule 4:01, § 3, as amended by 382 Mass. 820 (1981), states, in pertinent part: "Each act or omission by an attorney, individually or in concert with any other person or persons, which violates any of the Canons of Ethics and Disciplinary Rules Regulating the Practice of law (see rule 3:07) . . . shall constitute misconduct and shall be grounds for appropriate discipline even if the act or omission did not occur in the course of an attorney-client relationship or in connection with proceedings in a court. A violation of this Chapter 4 by an attorney, including without limitation the failure without good cause to . . . respond to requests for information by the Bar Counsel or the Board of Bar Overseers

made in the course of the processing of a complaint; or to comply with procedures of the Board consistent herewith for the processing of a petition for discipline or for the imposition of private reprimand or informal admonition . . . shall constitute misconduct and shall be grounds for appropriate discipline."

NOLAN, J. (dissenting). I think that a six-month suspension is too harsh. I would adopt the recommendation of the board and of the single justice for a public censure. Accordingly, I dissent.