### In the Matter of Frank H. Gross, Jr.

Suffolk. October 1, 2001. - December 6, 2001.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Attorney at Law,* Disciplinary proceeding, Deceit, Conduct prejudicial to administration of justice, Suspension.

This court concluded that a protracted and unexplained delay in the commencement of disciplinary proceedings against an attorney did not operate to reduce the sanction of an eighteen-month suspension from the practice of law that was to be imposed on the attorney for a knowing misrepresentation to the District Court compounded by other aggravating factors, where the allegations against the attorney were well corroborated from other sources, and the delay was not "substantially prejudicial"; where the delay did not prolong any form of public embarrassment, humiliation, or anxiety; and where the absence of ethical violations during the period of the delay was the norm to be expected of any attorney, and was not a mitigating factor that would justify a reduction in the sanction. [449-454]

Information filed in the Supreme Judicial Court for the county of Suffolk on June 5, 2000.

The case was reported by *Greaney,* J.

*Daniel C. Crane,* Bar Counsel.

*Frank H. Gross, Jr.,* pro se.

Sosman, J. The present bar discipline matter is before us on a reservation and report from a single justice of this court. Bar counsel asks us to adopt the recommendation of the Board of Bar Overseers (board) and suspend the respondent from the practice of law for eighteen months. The respondent does not challenge the underlying findings pertaining to his violations, but argues that, in light of the significant and unexplained delay in bringing the petition for discipline, during which time he committed no further violations, the appropriate sanction would be something less than suspension. We agree with bar counsel, and we impose an eighteen-month suspension from the practice of law.

1. *Facts.* The respondent was admitted to the bar in 1986. In 1990, he received an informal admonition from the board for violation of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), as appearing in 382 Mass. 769 (1982) (conduct involving dishonesty, fraud, deceit, or misrepresentation), stemming from an incident in which he obtained authorization to indorse a settlement check by misrepresenting the identity of the payee.

In 1991, the respondent was engaged to represent a defendant charged with operating a motor vehicle while under the influence of alcohol (second offense) and leaving the scene after causing personal injury. At the time of her arrest, the defendant admitted that she was the operator of the vehicle involved in the accident. Notwithstanding that admission, a friend of the defendant came forward as an alibi witness, claiming that the defendant had been with her watching television at the time of the accident. Having done nothing to attempt to suppress his client's statement to the police, and having failed to interview any of the three eyewitnesses to the accident named in the police report, the respondent decided to pursue a defense based on alibi and mistaken identification.

On the day of trial, the defendant and her alibi witness went to the Somerville Division of the District Court Department. At the respondent's instruction, the defendant answered the first call of the list and requested that the matter be held for second call. The respondent arrived shortly thereafter and spoke to the victim. From that conversation, he concluded that the victim would probably not be able to identify his client. Because his client and the alibi witness were somewhat similar in appearance, the respondent concocted a plan to have the alibi witness impersonate the defendant at second call, hoping thereby to confuse the victim and prompt a misidentification at trial. The respondent advised his client to remain in the back of the court room, and told the alibi witness to come forward to the microphone at second call.

The witness complied with this scheme, and came forward in answer to the second call of the defendant's case. At that point, the prosecutor asked for a continuance due to the unavailability of a witness, and a continuance was granted. Consistent with the impersonation of the defendant, the alibi witness proceeded

to sign the defendant's name on the form acknowledging the continuance date.

By that time, the police investigator realized that the person who had come forward was not the defendant. He notified the prosecutor, and the two approached the respondent. The prosecutor pointed at the woman signing the continuance form and asked respondent if the woman was his client. The respondent said that she was. The police investigator interrupted, insisting that the woman signing the continuance form was not the defendant. He pointed to a woman who was walking out of the court room, and identified her as the defendant. The respondent then acknowledged that the woman leaving the court room was in fact the defendant.

The respondent, the defendant, and the alibi witness left the court house. The prosecutor, after examining the forged signature on the continuance form and confirming that it was not the defendant's signature, asked the court for a third call, where she alerted the judge to the impersonation that had occurred at second call. As a result, the judge issued a default warrant for the defendant.

Three days later, the respondent and the defendant appeared in court again. At that time, the respondent misrepresented to the court that there had been "some confusion" during the second call on trial day and that he had not realized at the time that the defendant's alibi witness had come forward in answer to the call instead of the defendant herself. He claimed that he had had his back to the microphone and had not seen who was standing at the microphone. The judge then issued a capias for the arrest of the witness who had impersonated the defendant.

The respondent contacted his client and her witness later that same day. Explaining that they would be questioned about the incident, he advised them to tell the judge that they, too, had been "confused" at the time. The next day, when the witness appeared in court in response to the capias, the judge informed her that she faced criminal contempt charges and appointed counsel for her. One month later, in exchange for an agreement not to prosecute, the witness confirmed that her impersonation of the defendant had been orchestrated by the respondent.

The respondent proceeded to represent the defendant at her

jury-waived trial, held in December, 1991. At that trial, the witness was called to testify on behalf of the defendant.[1] On cross-examination, the prosecutor used the earlier impersonation incident to impeach the witness. The judge asked the witness to explain who had come up with the idea that she should impersonate the defendant, and the witness confirmed that it was the respondent who had instructed her to do so. The defendant was found guilty.

On April 29, 1992, the prosecutor's office notified the board of the incident and asked that the board investigate. The respondent claims that, shortly thereafter, he had discussions with bar counsel and that, within one year from the date the investigation had started, he was led to believe that the matter would be resolved by his attendance at a skills practice course. He attended the course, and claims that he thought the investigation had concluded.

On May 29, 1998, six and one-half years after the impersonation incident, bar counsel filed a petition for bar discipline alleging various ethical violations stemming from that incident. The petition also alleged other violations stemming from an unrelated small claims matter that had been reported to the board in 1995. On this record, there is no explanation for the delay in bringing the petition for discipline.

The hearing committee conducted a hearing on the petition for discipline on December 2 and 4, 1998, and issued its report on July 15, 1999, finding no violation with respect to the small claims matter. However, the hearing committee sustained the allegations concerning the 1991 impersonation incident and concluded that the respondent had violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5), as appearing in 382 Mass. 769 (1981) (conduct prejudicial to administration of justice); S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (6), as appearing in 382 Mass. 769 (1981) (conduct adversely reflecting on fitness to practice law); S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (2), as appear-

---

[1]She presented not the original alibi defense, but testified that the defendant told her, immediately after the accident, that the victim (a teenage boy on a bicycle) had run into her car and that he was not injured.

ing in 382 Mass. 783 (1981) (handling legal matter without adequate preparation); S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (3), as appearing in 382 Mass. 783 (1981) (neglect of legal matter); S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (1), as appearing in 382 Mass. 784 (1981) (failure to seek lawful objectives of client); S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (3), as appearing in 382 Mass. 784 (1981) (prejudice or damage to client); S.J.C. Rule 3:07, Canon 7, DR 7-102 (A) (3), as appearing in 382 Mass. 785 (1981) (concealing or knowingly failing to disclose that which required by law to reveal); S.J.C. Rule 3:07, Canon 7, DR 7-102 (A) (5), as appearing in 382 Mass. 785 (1981) (knowingly making false statement of law or fact); S.J.C. Rule 3:07, Canon 7, DR 7-102 (A) (7), as appearing in 382 Mass. 785 (1981) (counselling or assisting client in conduct lawyer knows to be illegal or fraudulent); S.J.C. Rule 3:07, Canon 7, DR 7-102 (B) (1), as appearing in 382 Mass. 785 (1981) (duty to call on client to rectify fraud, and otherwise to reveal fraud, except where privileged); S.J.C. Rule 3:07, Canon 7, DR 7-102 (B) (2), as appearing in 382 Mass. 785 (1981) (duty to reveal fraud where person other than client perpetrated fraud); and S.J.C. Rule 3:07, Canon 7, DR 7-104 (A) (2), as appearing in 382 Mass. 786 (1981) (lawyer not permitted to give advice to person whose interests are or have reasonable possibility of being in conflict with interests of client). The committee recommended a one-year suspension from the practice of law for these violations.

Bar counsel appealed from that recommendation, and appealed the committee's decision with respect to the small claims matter. On December 13, 1999, the board voted to adopt the hearing committee's findings of fact and conclusions of law with respect to both matters, but increased the recommended discipline to an eighteen-month suspension. The respondent sought reconsideration, which the board allowed but, on reconsideration, the board again recommended a sanction of an eighteen-month suspension. The matter was filed in the county court on June 5, 2000, and reserved and reported to the full bench on August 10, 2000.

2. *Discussion.* Bar counsel contends (and respondent does not dispute) that violations of the type at issue here ordinarily result

in a suspension of at least one year. See *Matter of McCarthy*, 416 Mass. 423 (1993) (one-year suspension for eliciting false testimony and offering false documents in rent control proceeding); *Matter of Neitlich*, 413 Mass. 416 (1992) (one-year suspension for misrepresenting terms of purchase and sale agreement in motion to vacate attachment); *Matter of Friedman*, 7 Mass. Att'y Discipline Rep. 100 (1991) (one-year suspension for directing client to sign and submit false affidavit to justify delay in service of complaint); *Matter of Grossman*, 3 Mass. Att'y Discipline Rep. 89 (1983) (one-year suspension for false representations to court concerning custody proceedings in another jurisdiction). Because other aggravating factors are present here (specifically, prior discipline for another violation involving deceit, the fact that the violations jeopardized both his client and a witness, and the fact that the respondent persisted in attempts to conceal his involvement in the fraud), the board determined that an eighteen-month suspension was warranted. A one-year suspension is "the minimum sanction" for misconduct of this nature, *Matter of McCarthy*, *supra* at 431, and the aggravating factors here would suffice to support the recommended eighteen-month suspension.

The respondent contends that the sanction to be imposed should be reduced due to the board's delay in commencing disciplinary proceedings against him. He recommends as appropriate discipline either a public reprimand or, in the alternative, a term of suspension that is itself suspended during a probationary period. The delay warrants such a reduction in the sanction, he argues, because the delay was prejudicial to his defense against the charges and because he has, in the intervening years, practiced law without committing any further ethical violations. The sole disputed issue before us is whether a protracted and unexplained delay in the commencement of disciplinary proceedings should operate to reduce the sanction that is to be imposed.

Mere delay in the commencement of disciplinary proceedings does not result in dismissal of the proceedings. See *Matter of London*, 427 Mass. 477, 481 (1998), and cases cited. Rather, delay may be considered in mitigation. See *Matter of Kerlinsky*, 406 Mass. 67, 76 n.8 (1989), cert. denied, 498 U.S. 1027 (1991)

(delay in disciplinary hearing "is a mitigating circumstance to be considered"). There, the delay in pursuing formal proceedings had prejudiced the respondent's defense, as two witnesses had died in the interim. *Id.* at 75. However, where the allegations against the attorney were corroborated from other sources, "the inability to interrogate those witnesses was not substantially prejudicial." *Id.*

The respondent suggests a similar sort of prejudice here. He contends that, due to the passage of years, he could not locate other witnesses who had been present in court at the time of the incident. However, the hearing committee heard testimony from three percipient witnesses to the fraud on the court — the assistant district attorney, the police investigator, and the respondent's client — who confirmed that the impersonation scheme and subsequent attempted cover up had been concocted by the respondent. (Although the witness who impersonated the defendant did not testify before the hearing committee, her prior testimony under oath had also attributed responsibility for the scheme to the respondent.) While the respondent understandably would have liked to identify and question anyone who had been present, it appears speculative at best to suggest that any of those missing witnesses would have assisted the respondent. As in *Matter of Kerlinsky, supra,* the allegations against the respondent were well corroborated from other sources, and the delay was not "substantially prejudicial."

Although we have no case on point in Massachusetts, other jurisdictions have noted that delay in disciplinary proceedings can result in substantial hardship to an attorney where the public has already become aware of the misconduct and the attorney has suffered ongoing public censure prior to the conclusion of the delayed disciplinary proceedings. See *Florida Bar* v. *Randolph,* 238 So. 2d 635, 638 (Fla. 1970) (attorney suffered "professional embarrassment" and was "subjected to the stigma of community suspicion and criticism" prior to resolution of disciplinary complaint); *Louisiana Bar Ass'n* v. *Edwards,* 387 So. 2d 1137, 1139-1140 (La. 1980) (delay in disciplinary proceedings "operated to punish" attorney who was "subjected to years of public scrutiny, censure"). In substance, where an attorney has been subjected to a considerable period of public

opprobrium while awaiting formal discipline, the delay will have already inflicted an unofficial sanction, and the formal sanction should take into account what the attorney has suffered while awaiting resolution of the charges. Here, the delay had no such impact on the respondent. There was no public awareness of any pending investigation of charges against the respondent, and the respondent contends that he himself was unaware of the fact that any disciplinary proceeding was still contemplated. The delay in filing the petition for discipline did not prolong any form of public embarrassment, humiliation, or anxiety.

The respondent contends that, notwithstanding his prior misconduct, he was capable of and did achieve a significant degree of rehabilitation prior to the commencement of disciplinary proceedings. During the six and one-half years that elapsed between the time of the impersonation incident and the issuance of the petition for discipline, the respondent contends that he practiced law without any further ethical violation. Thus, the respondent argues, the fact of his rehabilitation should be viewed as a substantial mitigating factor.

We recently rejected such an argument in a case where many years had elapsed between the commission of the violation and the commencement of disciplinary proceedings. *Matter of Finn*, 433 Mass. 418, 425 (2001). "The passage of time is not an appropriate factor in mitigation because many violations otherwise would go unvindicated, a result contrary to the best interests of the legal profession. We consider the absence of any complaints against the respondent for the past eight years a 'typical' mitigating factor that does not warrant a reduction in his sanction." *Id.*, citing *Matter of Budnitz*, 425 Mass. 1018, 1019 (1997), and *Matter of Anderson*, 416 Mass. 521, 527 (1993). The same is true here. The absence of ethical violations is the norm that is to be expected of any attorney. It is not a mitigating factor that would justify a significant reduction in sanction.

Even assuming that a demonstration of rehabilitation in the intervening years might be an appropriate factor to consider in a close case, it would not suffice to overcome the gravity of the original offenses at issue here. A knowing misrepresentation to a court is itself a serious violation, and that serious violation was then compounded by other aggravating factors. The

respondent's orchestration of the impersonation scheme before the court was a form of misrepresentation amounting to criminal contempt and obstruction of justice. See *United States* v. *Thoreen*, 653 F.2d 1332, 1340-1341 (9th Cir. 1981), cert. denied, 455 U.S. 938 (1982) (defense attorney found in criminal contempt for arranging to have witness sit with him at counsel table and impersonate defendant as such misrepresentations are "inherently obstructive" of justice); *People* v. *Simac*, 161 Ill. 2d 297, 310-314 (1994) (same); *Miskovsky* v. *State ex rel. Jones*, 586 P.2d 1104, 1107-1108 (Okla. Crim. App. 1978) (same). When the ruse was uncovered, the respondent sought to evade responsibility, and asked his client and another witness to make further misrepresentations to the court to assist him in covering up his own wrongdoing. Ensnaring them in the scheme led to the issuance of a default warrant against his client, a capias for the arrest of the witness, and potential criminal charges against the witness. The ruse also operated to undermine the witness's credibility at the client's trial. Thus, the underlying misconduct is permeated not only by fraud on the court, but by a willingness to jeopardize others (including his own client) in order to perpetrate that fraud and then evade detection. See *Matter of Dawkins*, 412 Mass. 90, 94 (1992) (attorney's misconduct led to client's arrest).

We also note that the respondent's prior discipline was for a violation that also involved deceit, albeit a form of deceit that did not involve any tribunal.[2] Prior discipline, "even if unrelated to the current charges," is a significant aggravating factor. *Id.* at 96. *Matter of Bryan*, 411 Mass. 288, 291 (1991). Here, there is not only prior discipline, but the prior incident also was predicated on the respondent's fraud.

We thus conclude that a suspension from the practice of law is still warranted, despite the passage of time, and agree with bar counsel that an eighteen-month suspension is comparable to the term of suspension ordered in such cases. The matter is

---

[2]The earlier admonition arose out of a misrepresentation to an insurance company that was a copayee on a settlement check. As a result of that misrepresentation, the respondent was able to cash the check and distribute the entire proceeds to himself and his client when a portion of those proceeds was owed to the copayee to discharge a lien.

remanded to the single justice for the entry of an order suspending the respondent from the practice of law for eighteen months.

*So ordered.*